FILED

2007 Mar-08  PM 03:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **WILLIAM T. COSPER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CASE NO. CV 05-B-1294-S** |
| **PEMCO AEROPLEX, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Summary Judgment.  (Doc. 16.)  Plaintiff William T. Cosper has sued his former employer, defendant Pemco Aeroplex, Inc., alleging that defendant discriminated against him on the basis of his age.  Upon consideration of the record, the submission of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment is due to be granted.

## I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F. 2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144,157 (1970).  Once

the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Celotex Corp. V. Catrett*, 477 U.S. 317, 324 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* At 249.  Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in her favor.  *See id.* At 255.  Nevertheless, the non-moving party need not be given the benefit of every inference but only of every reasonable inference.  *See Brown v. City of Clewiston*, 848 F. 2d 1534, 1540 n. 12 (11th Cir. 1988).

## II. STATEMENT OF FACTS

Plaintiff was employed by Pemco as a Quality Assurance Inspector, an hourly union position, from 1980 until he resigned from Pemco in the beginning of 2002.  (Doc. 17, Ex. B at 24, 35.)  In February 2003, plaintiff was re-hired by Pemco for the position of Quality Assurance Supervisor ("QA Supervisor") over the Backshop area ("Backshops").[1] (Doc. 17, Ex. B at 18, 30.)  Samuel Porter, the Director of the Quality Department for

---

[1]According to plaintiff, Backshops included "the machine shop, sheet metal shop, plating rack, calibration lab, shipping and receiving, and the Y files."  (Doc. 17, Ex. B at 31.)

Pemco, approved plaintiff's hiring in 2003, when plaintiff was approximately 53 years old.  (Doc. 17, Ex. B at 54.)  As a QA Supervisor over Backshops, plaintiff initially supervised approximately ten people.  (Doc. Ex. B at 54.)

In the summer of 2004, Porter moved plaintiff to a position as QA Supervisor over "Shakedown,"[2] where plaintiff joined two other QA Supervisors also filling that role. (Doc. 17, Ex. B at 60.)  After six weeks in Shakedown, Pemco returned plaintiff to his former position as QA Supervisor over Backshops.  (Doc. 17, Ex. B at 58.)  At that time, there were only six or eight employees working in Backshops under plaintiff's supervision.  (Doc. 17, Ex. B at 84; Doc. 17, Ex. C at 13.)  Additionally, there was an emphasis by Pemco on wanting QA Supervisors and the inspectors they supervised certified in Non-Destructive Inspection ("NDI").  (Doc. 17, Ex. B at 55.)  Plaintiff was not NDI certified.  (Doc. 17, Ex. B at 55-57.)

In September 2004, plaintiff was called to a meeting with Porter and Doris Sewell, Pemco Aviation Group's Vice President for Legal and Corporate Affairs, and was informed that his position was eliminated due to a reduction in force.  (Doc. 17, Ex. B at 85-86, 102.)  As a result, he was being discharged.  (Doc. 17, Ex. B at 102.)  Pemco contends it chose plaintiff's position for elimination because it could be consolidated with another QA Supervisor position.  (Doc. 17, Ex. C at 65-66.)  Another QA Supervisor, Mike Alton, assumed plaintiff's QA Supervisor position in addition to his existing

---

[2]Shakedown is one of the inspection functions.  (Doc. 22, Ex. C at 18.)

responsibilities.  (Doc. 17, Ex. C at 66.)  There is no dispute that Alton took over

plaintiff's former responsibilities in Backshops in addition to Alton's existing duties.

(Doc. 17, Ex. B at 64.)

Pemco has not hired anyone to replace plaintiff.  (Doc. 17, Ex. C at 65-66.)  No

QA Supervisor has been hired since plaintiff was terminated.  (Doc. 17, Ex. C at 64-72,

Ex. E at ¶4.)  From August 2004 through December 2004, Pemco eliminated twelve

salaried positions, including plaintiff's, and laid off employees in the eliminated

positions.  (Doc. 17, Ex. E at ¶5.)

The decision to eliminate plaintiff's position was made by Porter, the person who

approved plaintiff's hiring in 2003.  Porter was over forty years old and in the protected

age group when he made the decision.  (Doc. 17, Ex. C at 7, 57; Ex. E at ¶6; Ex. C at 7.)

Plaintiff filed his complaint against defendant on June 15, 2005.  (Doc. 1.)

Plaintiff alleges that his termination was motivated primarily by his age in violation of the

Age Discrimination in Employment Act ("ADEA").  (*Id*.)

## III. <u>DISCUSSION</u>

### A.  ADEA

Pursuant to the ADEA, it is "unlawful for an employer . . . to discharge any

individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).  "When a

plaintiff alleges disparate treatment, liability depends on whether the protected trait . . .

actually motivated the employer's decision.  That is, the [protected trait] must have

actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. V. Biggins*, 507 U.S. 604, 610 (1993))) (internal citations and quotations omitted).

In order to prevail on his ADEA claim, plaintiff must first make a *prima facie* showing of discrimination, which requires him to show 1) that he is a member of the age group protected by the ADEA; 2) that he was adversely affected by an employment decision; 3) that he was qualified for his position; and 4) that similarly situated employees outside the protected class were treated more favorably. *See Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999) (citing *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998)), *cert. denied* 529 U.S. 1109 (2000).

The prima facie case requirements have been refined for situations where the plaintiff's position was eliminated pursuant to a reduction in force. In such a case, elements (3) and (4) above are replaced by a requirement that plaintiff show he "was qualified to assume another position at the time of [his] discharge or demotion" and provide "evidence, circumstantial or direct, from which a fact finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1438 (11th Cir. 1983), *superseded by statute on*

*other grounds as stated in Wilson v. General Motors Corp.*, 888 F.2d 779 (11th Cir. 1989).

"Once a prima facie case is established, a defendant must proffer legitimate, nondiscriminatory reasons for its employment decision.  If such reasons are identified, a plaintiff then bears the ultimate burden of proving them to be a pretext for age discrimination."  *Damon*, 196 F.3d at 1361 (citing *Turlington*, 135 F.3d at 1432).

## B.  PRIMA FACIE CASE

Plaintiff establishes the first two elements of his prima facie case.  It is undisputed that 1) plaintiff was a member of the protected age group and 2) that he was adversely affected by an employment decision.  Plaintiff creates an issue of fact as to the third element.  Samuel Porter testified that, around the time that plaintiff was terminated, there were several production positions available.  (Doc. 17, Ex. C at 17.)  The court will assume for the purposes of defendant's Motion for Summary Judgment that plaintiff was qualified for these positions.

However, plaintiff fails to establish a prima facie case because he has not offered evidence from which a fact finder might reasonably conclude that defendant intended to discriminate in reaching the decision to terminate plaintiff.  *See Coker*, 709 F.2d at 1438.

Plaintiff attempts to show that Pemco intended to discriminate against him on the basis of age through the following points:

> During this same time frame – approximately one month prior to plaintiff's termination – the defendant hired another QA Supervisor

6

> who did not fall within the protected age class.  Also, two to three
> months prior to plaintiff's termination, two Quality Assurance
> Supervisors[3] were allowed to move to other positions within the
> company rather than being terminated.  This reassignment rather than
> termination had been the practice at PEMCO when there was a
> reduction in work force. [Plaintiff] was not given this option.

(Doc. 21 at 8.)  Plaintiff's allegations are insufficient to establish an issue of fact as to

whether the defendant intended to discriminate in reaching the decision to terminate

plaintiff.

Plaintiff apparently seeks to show that similarly situated employees outside of the

protected age class were treated better by establishing Charles Carlisle, a QA Supervisor

hired a month before Cosper's termination, as a comparator.  *See Damon*, 196 F.3d at

1359.  When considering comparators, the court looks to a "person or persons who have

very similar job-related characteristics and who are in a similar situation to determine if

the plaintiff has been treated differently than others who are similar to him."  *McPherson*

*v. University of Montevallo*, 922 F.2d 766, 775 (11th Cir. 1991).  "[T]he comparator must

be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable

decision by the employer."  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th

Cir. 2004).  Carlisle fails as a comparator because he is not similarly situated.  Carlisle

was not employed as a QA Supervisor in Backshops, the position held by plaintiff and

determined by Samuel Porter to no longer be needed.  (Doc. 17, Ex. C at 47; Doc. 17, Ex.

---

[3]The "QA Supervisors" plaintiff refers to are James Caudle and Matthew Gurganus.
However, there is no evidence in the record that Caudle or Gurganus were in fact QA
Supervisors, and Porter testified that they were not QA Supervisors.  (Doc. 17, Ex. C at 44.)

B at 20-22.)  Because Carlisle and plaintiff are not "similarly situated in all relevant aspects," Carlisle cannot be considered a comparator.  *See Knight v. Baptist Hosp. Of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003).  Accordingly, defendant's hiring of another QA Supervisor does not establish any inference of age discrimination.

Plaintiff also seeks to establish James Caudle and Matthew Gurganus as comparators.  (Doc. 21 at 8.)  Plaintiff claims that Caudle and Gurganus were allowed "to move to other positions within the company rather than being terminated."  However, Caudle and Gurganus are not proper comparators for two reasons.  First, there is no evidence suggesting that they were outside of the protected age group.  Second, there is no evidence that either Gurganus or Caudle was a QA Supervisor, or that Gurganus was in any supervisory role at all.

Plaintiff also claims that the past practice at Pemco was that if there was a reduction in the workforce in one area, employees would be given the opportunity to go to a different area instead of being terminated.  (Doc. 21 at 3.)  However, plaintiff has presented no evidence of a QA Supervisor being given that opportunity.  Furthermore, plaintiff, whose only experience during his entire employment with Pemco was in the Quality Department, has acknowledged that he is not aware of any QA Supervisor who was given the opportunity to go back to a position in the Quality Department.  (Doc. 17, Ex. B at 87.)

Plaintiff simply has not offered evidence by which a fact finder could reasonably

conclude that Pemco intended to discriminate against plaintiff on the basis of age, especially in light of the following undisputed facts:

1.      Plaintiff was re-hired by Pemco at the age of 53 by Samuel Porter, the same person who made the decision approximately one and a half years later, when plaintiff was 54, to eliminate plaintiff's position and discharge plaintiff.  (Doc. 17 at ¶7.)

2.      At least five QA Supervisors employed at the time of plaintiff's discharge who were not laid off were the same age as plaintiff or older, and three ranged in age from 62 to 67.  (Doc. 17, Ex. E at ¶2.)

3.      After his layoff, another QA Supervisor assumed all of plaintiff's responsibilities in addition to his existing duties.  (Doc. 17 at 5.)

4.      No one has been hired to replace plaintiff, and no QA Supervisors have been hired since plaintiff's layoff.  (Doc. 23 at 7.)

5.      From August 2004 through July 1, 2006, Pemco eliminated 71 other salaried positions in addition to plaintiff's.  (Doc. 17 at 6.)

Accordingly, the court finds that plaintiff has not created an issue of fact as to whether the defendant intended to discriminate in reaching the decision to terminate plaintiff.  Because plaintiff has not established a prima facie case, defendant's Motion for Summary Judgment is due to be granted.

## C.  PRETEXT

Even assuming a prima facie case of discrimination, defendant has articulated

"legitimate, nondiscriminatory reasons for its employment decision." *See Damon*, 196

F.3d at 161.  Defendant contends that plaintiff was discharged because of a reduction in

force, and that plaintiff's position was chosen for elimination because his duties could be

assumed by another QA Supervisor who was certified in NDI.  (Doc. 23 at 8.)

Defendant's contention is supported by the following facts:

> At the time of his discharge, Plaintiff was told that the reason he was
> being laid off was a reduction in force.  At the time of his discharge,
> there was an emphasis by Pemco on wanting QA Supervisors
> certified in Non-Destructive Inspection ("NDI"), and Plaintiff was
> not NDI certified.  At the time of his discharge, Plaintiff only
> supervised six or eight people, who were well-trained and qualified,
> and following his discharge all of his duties were assumed by
> another QA Supervisor who was the Level 3 NDI supervisor and
> Pemco's NDI trainer.  No one has been hired to replace Plaintiff, and
> no QA Supervisors have been hired since Plaintiff's layoff in 2004.
> From August 2004 through July 1, 2006, Pemco eliminated 71 other
> salaried positions in addition to Plaintiff's.  Seven QA Supervisors
> not laid off when Plaintiff was were the same age as Plaintiff or
> older, three of whom ranged from 62 to 67.

(Doc. 23 at 8-9.)  Defendant's reason is sufficiently clear and reasonably specific to shift

the burden to plaintiff to establish that the reasons are a pretext for age discrimination.

*See Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000); *Increase Minority*

*Participation by Affirmative Change Today of Northwest Fla., Inc. (IMPACT) v.*

*Firestone*, 893 F.2d 1189, 1194 (11th Cir. 1990), *cert. denied, sub. nom. Sec'y of State v.*

*Walker*, 498 U.S. 847 (1990).

Because defendant has articulated a legitimate nondiscriminatory reason for

plaintiff's termination –

10

> the presumption of discrimination is eliminated and "the plaintiff has
> the opportunity to come forward with evidence, including the
> previously produced evidence establishing the prima facie case,
> sufficient to permit a reasonable factfinder to conclude that the
> reasons given by the employer were not the real reasons for the
> adverse employment decision."  If the plaintiff does not proffer
> sufficient evidence to create a genuine issue of material fact
> regarding whether each of the defendant employer's articulated
> reasons is pretextual, the employer is entitled to summary judgment
> on the plaintiff's claim.

*Chapman*, 229 F.3d at 1024-25 (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519,

1528-29 (11th Cir. 1997), *cert. denied sub. nom. Combs v. Meadowcraft Co.*, 522 U.S.

1045 (1998))(internal citations and quotations omitted).

In an attempt to show pretext, plaintiff suggests that Pemco has been inconsistent

in its explanations of why plaintiff was transferred from Shakedown back to his position

in Backshops after recently being transferred from Backshops to Shakedown.  However,

assuming plaintiff has raised a genuine issue of fact as to why he was transferred from

Shakedown back to Backshops, he has not presented any evidence suggesting that the

reason given for the elimination of the Backshops position was a pretext for

discrimination, and that the position was actually eliminated because of plaintiff's age.

Plaintiff also attempts to show pretext by pointing to Pemco's disparate treatment

of Carlisle, a QA Supervisor from outside the protected age class who was hired several

weeks before plaintiff's position was eliminated, and who was not terminated when

plaintiff's position was eliminated.  (Doc. 21 at 8.)  However, Carlisle was employed in a

completely different position than the position occupied by plaintiff.  (Doc. 17, Ex. C at

47; Doc. 17, Ex. B at 20-22.)

Plaintiff also argues that he "was not given the opportunity to assume other positions for which he was qualified, which had been the practice at Pemco." (Doc. 21 at 10.) Plaintiff has not offered any evidence of anyone outside the protected age group who was given the opportunity to assume another position instead of being discharged. In addition, there is no evidence that any other QA Supervisor was offered the opportunity to assume another position at the time of the reduction in force.

Therefore, as an alternative ground for dismissing plaintiff's claims, the court notes that plaintiff has not offered evidence on which a reasonable jury could find that the reasons articulated by defendant for plaintiff's discharge were pretext for unlawful discrimination based on plaintiff's age.

## IV.  CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law. An order granting defendant's motion for summary judgment will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 8th day of March, 2007.

*Sharon Lovelace Blackburn*

SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE